# ORIGINAL

(4)
5/18/
~R

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GLADWIN WILSON,                  :
                                 : 1:CV-01-0037
            Petitioner,          :
                                 : (Judge Caldwell)
        v.                       :
                                 :
JANET RENO, ATTORNEY GENERAL,    :
                                 :
            Respondent           :

**FILED**
**HARRISBURG**
MAY 17 2001
MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

## RESPONSE TO
## ORDER TO SHOW CAUSE

### Introduction

Petitioner Gladwin Wilson is a native and citizen of Guyana currently in the custody of the Immigration and Naturalization Service (INS).  He has filed a "Petition for Writ of Habeas Corpus Pursuant to Title 28 U.S.C. §2241 and Complaint for Injunctive Relief" (hereinafter "petition").  Through this petition, Mr. Wilson does not challenge his final order of removal; rather, he challenges his continued detention pending deportation.  Because Mr. Wilson's detention does not violate either substantive or procedural constitutional rights, the petition for habeas corpus should be denied.

### Statement of the Case

Petitioner filed his petition on January 10, 2001.  On April

1

27, 2001, the Court issued an Order to Show Cause requiring respondent to file a response within twenty days, or by May 17, 2001.  This response is filed on behalf of the INS in opposition to the petition.

Petitioner Wilson was a party to an earlier joint petition for habeas corpus filed by six detainees on February 24, 2000.[1] In that case, the petitioners challenged their mandatory detention pending removal proceedings, under 8 U.S.C. § 1226(c), INA § 236(c).  Because Mr. Wilson's order of removal had become final after the petition was filed, the Court held that Mr. Wilson's claim had been mooted.  Memorandum of September 27, 2000, at 2 (Koita, et al., v. Reno, Document 18).

On or about April 20, 2000, Mr. Wilson filed a "Petition to Reopen and to Schedule Hearing on Petition's [sic] United States Naturalization Proceeding with Complaint for Declaratory Judgment Pursuant to 28 U.S.C. § 2201."  Wilson v. Immigration and Naturalization Service, No. 1:CV-00-0723 (M.D.Pa.) (Judge Caldwell).  Mr. Wilson sought an order directing the INS to allow him to take the Oath of Allegiance as a United States citizen. The Court construed the petition as a complaint under the Administrative Procedures Act, and entered judgment for the respondent, and against petitioner, on March 2, 2001.

---

[1] See Jibril Koita, Gladwin Wilson, Omari Maher, Saleh Sharif, Celio De La Cruz and Anh Le v. Reno, 1:CV-00-0070 (M.D.Pa.) (Judge Caldwell).

2

Petitioner Wilson is a native and citizen of Guyana who entered the United States in 1988.  As set forth in the Court's Memorandum of March 20, 2001, in <u>Wilson v. INS</u>, *supra*, he pled guilty in 1998 in the United States District Court for the Eastern District of New York to conspiring to utter and possess forged and counterfeit securities.  He was sentenced to twelve months and one day incarceration.  On April 5, 1999, he was placed in removal proceedings under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, on the grounds that he had been convicted of an aggravated felony.  On October 15, 1999, Mr. Wilson was ordered deported to Guyana.  He timely filed an appeal with the Bureau of Immigration Appeals, which was dismissed on May 10, 2000.  Exh. A, at 1.  He is currently being detained at the Snyder County Prison.  *Id.*

### Question Presented

Whether petitioner's continued detention pending repatriation to Guyana violates his rights under the United States Constitution.

Suggested answer in the negative.

### Argument

Petitioner argues that the INS violated his due process rights by refusing to release him based on a "grudging and perfunctory" review process which does not meet the standards set forth in <u>Ngo v. INS</u>, 192 F.3d 390 (3rd Cir. 1999).  Because Mr. Wilson has received constitutionally sufficient custody review,

3

and because the INS continues to diligently seek travel papers for him, Mr. Wilson has received that process which is due him under the Constitution.

The standards governing detention pending removal from the United States were articulated by the Third Circuit in Ngo and this Court in Martinez v. INS, 97 F. Supp.2d 647 (M.D. Pa. 2000) (Caldwell, J.). In Ngo, the Third Circuit held that the detention of aliens for prolonged periods when the countries of origin refuse to allow their return is constitutionally and statutorily permissible if the INS provides individualized periodic review of eligibility for release on parole. 192 F.3d at 392, 394-98. The appellate court went on to analyze the detailed Interim Procedures then governing the periodic review applicable to aliens in INS custody. These procedures, which are set forth in their entirety as an appendix to the Ngo decision, required review during the first 90 days after entry of a final removal order and every six months thereafter. The procedures required thirty days written notice to the detainee under review, and required that the notice specify the factors to be considered in determining whether the detainee should be released. Under the procedures, the detainee was entitled to present any relevant information, in writing, electronically, by mail, or in person. Further, the detainee was entitled to be represented by an attorney or other person. See Ngo v. INS, Appendix, 192 F.3d at

4

400-401.

After carefully reviewing the Interim Procedures, the Third

Circuit held:

> We have reviewed these rules carefully and
> conclude that conscientiously applied, they provide
> reasonable assurance of fair consideration of a
> petitioner's application for parole pending removal.

* * * *

> Among other things, the rules require an individualized
> analysis of the alien's eligibility for parole, present
> danger to society and willingness to comply with the
> removal order.  Moreover, they do not result in placing
> additional cases on the already overloaded dockets of
> immigration judges.

* * * *

> Our reading of the Interim Rules suggests that they
> will encourage good faith review.  So long as
> petitioner will receive searching periodic reviews, the
> prospect of indefinite detention without hope for
> parole will be eliminated.  In these circumstances, due
> process will be satisfied.

*Id*. at 398-399.

On December 30, 1999, the Third Circuit amended the Ngo

decision, making it clear that the decision was intended to apply

only to *excludable* aliens, and that the Court did not intend to

express an opinion with regard to *deportable* aliens.  However,

nothing in the rationale of the Ngo decision suggests that the

Third Circuit will find the Interim Procedures constitutionally

inadequate when the Court is faced with a case involving a

deportable alien, such as Mr. Wilson.  Indeed, in Martinez,

*supra*, this Court extended Ngo's reasoning to deportable aliens.

5

On December 21, 2000, the INS promulgated new regulations to revise the procedures established in the existing regulations, and to establish permanent procedures for post-order custody review cases.  8 C.F.R. § 241.4 as amended by 65 Fed. Reg. 80281, *et seq.* (Dec. 21, 2000).  The new regulations supercede prior procedures and establish a custody review program modeled after the regulations establishing the Cuban Review Plan, which governs the review of excludable Mariel Cubans who are in INS custody and whose removal to Cuba is not currently possible or practicable. *See* 8 C.F.R. § 212.12.  These new regulations permit a comprehensive and fair review of the continued detention of aliens through a process that "is intended to balance the need to protect the American public from potentially dangerous aliens, who remain in the United States contrary to law, with the humanitarian concerns arising from another country's unjustified delay or refusal to accept the return of its nationals."  65 Fed. Reg. at 80282.

The new procedures provide for a custody review for aliens where "the alien's removal while proper, cannot be accomplished during the 90-day period because no country currently will accept the alien, or removal of the alien prior to expiration of the removal period is impractical or contrary to public interest."  8 C.F.R. § 241.4(k)(1), as amended, 65 Fed. Reg. at 80297.  The new procedures consist of a review by the district director of the

6

alien's records and any written submissions in English submitted by or on behalf of the alien to the district director, or any other relevant evidence, prior to the expiration of the 90-day removal period.  8 C.F.R. § 241.4(h)(1), as amended, 65 Fed. Reg. at 80296.  However, the district director may in his discretion schedule a personal or telephonic interview with the alien as part of his custody review determination.  *Id.*  The district director must provide written notification to the alien regarding whether he will continue to be detained pending removal or will be released.  8 C.F.R. § 241.4(k)(1), as amended, 65 Fed. Reg. at 80297.  When release is denied pending the alien's removal, the district director in his discretion may retain the responsibility for custody determinations for up to three months after expiration of the 90-day removal period, during which time the district director may conduct such additional review of the case as he deems appropriate.  8 C.F.R. § 241.4(k)(1), as amended, 65 Fed. Reg. at 80297.  The district director may release the alien if he is not removed within this time frame, or may refer the matter to INS Headquarters Post-Order Detention Unit (HQPDU) for further custody review.  8 C.F.R. § 241.4(k)(1), as amended, 65 Fed. Reg. at 80297.

If the alien is continued in custody following the 90-day review, and the alien has not been removed within three months of the district director's decision, authority over the custody

7

determination transfers to the Executive Associate Commissioner
at INS headquarters.  8 C.F.R. § 241.4(k)(2), as amended, 65 Fed.
Reg. at 80297.  The initial HQPDU review will ordinarily be
conducted at the expiration of the three-month period after the
90-day review or as soon thereafter as practicable, and the alien
will be provided with approximately 30 days notice of that
review.  8 C.F.R. § 241.4(k)(2), as amended, 65 Fed. Reg. at
80297.  The new regulation provides for subsequent reviews for a
detainee to be ordinarily commenced within approximately one year
of a decision by the Executive Associate Commissioner declining
to grant release.  8 C.F.R. § 241.4(k)(2), as amended, 65 Fed.
Reg. at 80297.  Not more than once every three months in the
interim between annual reviews, the alien may submit a written
request to the HQPDU for release consideration based on a proper
showing of a material change in circumstances since the last
annual review.  8 C.F.R. § 241.4(k)(2), as amended, 65 Fed. Reg.
at 80297.  The regulation requires the HQPDU to respond in
writing within approximately 90 days.  8 C.F.R. § 241.4(k)(2), as
amended, 65 Fed. Reg. at 80297.

The new regulation also provides that the annual reviews
conducted by HQPDU shall be by a two person panel (requiring a
unanimous vote) or three-person panels (requiring a majority
vote) that will make recommendations to the Executive Associate
Commissioner regarding whether an alien should be released or

8

continue to be detained.  8 C.F.R. § 241.4(k)(2), as amended, 65
Fed. Reg. at 80297.  At the beginning of each annual review, a
review panel member shall do a record review and if the Director
of the HQPDU does not accept a panel's recommendation to grant
release following a records review or if the alien is not
recommended for release, a review panel shall personally
interview the detainee.  8 C.F.R. § 241.4(k)(2), as amended, 65
Fed. Reg. at 80297.  The alien may be accompanied during the
interview by a person of his choice, with limited exceptions.  8
C.F.R. § 241.4(k)(2), as amended, 65 Fed. Reg. at 80297.  The
alien may submit to the review panel any information in English,
that he believes presents a basis for his release.  8 C.F.R. §
241.4(k)(2), as amended, 65 Fed. Reg. at 80297.  The panel's
recommendation is required to be in writing and is to include a
brief statement of the factors the review panel deems material to
its recommendation.  8 C.F.R. § 241.4(k)(2), as amended, 65 Fed.
Reg. at 80297.  The Executive Associate Commissioner is not
bound, however, by the review panel's recommendation.  8 C.F.R. §
241.4(k)(2), as amended, 65 Fed. Reg. at 80297.

To release an alien, the decision-maker must conclude that:
(1) travel documents for the alien are not available or, in the
opinion of the service, immediate removal, while proper, is
otherwise not practicable or not in the public interest; (2) the
detainee is presently a non-violent person; (3) the detainee is

9

likely to remain non-violent if released; (4) the detainee is not likely to pose a threat to the community if released; (5) the detainee is not likely to violate the conditions of release; and (6) the detainee does not pose a significant flight risk if released.  8 C.F.R. § 241.4(e), as amended, 65 Fed. Reg. at 80295.  A list of factors for the District Director, review panel and Executive Associate Commissioner to consider in making their recommendations or decisions is provided at  8 C.F.R. § 241.4(f), as amended, 65 Fed. Reg. at 80295-96.

Mr. Wilson's order of removal became final on May 10, 2000. Exh. A.  His post-order custody review was conducted on February 12, 2001, *id.*, after promulgation of the new regulations. Accordingly, the new regulations apply.  However, a review of the Custody Review Worksheet (Exhibit A) indicates that his review would satisfy either the Interim Regulations approved in Ngo or the new regulations.  The panel unanimously recommended continued detention, noting that Mr. Wilson refused to accept responsibility for his criminal conviction and did not appear credible, and that Guyana would eventually issue a travel document.  Exh. A at 5.

In addition, the INS has continued to diligently seek travel documents for Mr. Wilson from the government of Guyana.  Between May 26, 2000, and March 7, 2001, the INS made at least four written requests for documents, and also made several telephone

10

requests.  *See* Exh. B (letters dated May 26, 2000, June 21, 2000, January 3, 2001, and March 7, 2001, regarding requests for travel documents).

Therefore, it would be premature for this Court to conclude that the Government of Guyana will not provide a travel document for Mr. Wilson in the future and that his detention is indefinite.

### Conclusion

For the foregoing reasons, respondent respectfully requests that this Court deny petitioner's petition for writ of habeas corpus.

Respectfully submitted,

MARTIN C. CARLSON
United States Attorney


MARY CATHERINE FRYE
Assistant U.S. Attorney
228 Walnut Street
Harrisburg, PA 17108
(717) 221-4482

Dated: May 17, 2001

11

# EXHIBIT - 1

EXHIBIT A

# POST ORDER CUSTODY REVIEW WORKSHEET FOR FILE REVIEW AND/OR INTERVIEW

**Detainee Name** Gladwin WILSON    **Date of Birth:** 01/03/59  "A" **Number:** 41 928 716

**AKAs:**                           **BOP Number:** 47748-053

**Country of Birth:** Guyana        **Citizenship:**  Guyana

**Date of Arrival:** April 18, 1988    **Place of Arrival:** New York, NY

**Manner of Arrival:** P5-1 Immigrant    **Last Date into INS Custody:** June 15, 1999

**Entered INS Custody from:**       ☐ **Local,** ☐ **State, or** ☒ **Federal**
                                    ☐ **Other**

**Location:**    LSCI Allenwood      **Institution Number:** 47748-053

**Immigration History:**  (Prior INS arrest[s]/parole/bond/custody information)

    Describe:    Subject entered in 1988 as an Immigrant. He was ordered deported on October 15, 1999. BIA dismissed his appeal on May 10, 2000.

---

**Deportation Officer:** David O'Neill    **Date of Review:** February 12, 2001
                 John Lawton

**Location Detained:**  Snyder County Jail

---

**Deportation/Exclusion/Removal Proceedings**

**List all Charges:**    ☒    Section 237 (a)(2)(A)(iii),
                         ☐    Section 212 (a)  ,      ,
                         ☐    Section 241    ,    ,

☒    Under <u>Final Order</u> dated 5/10/00 by ☐ IJ  ☒ BIA  ☐ Other

☐    Appeal Waived/Appeal Time Elapsed

**Travel Document Status/History:**

Request made to the Guyanan Consulate on May 26, 2000. Request for further HQ assistance made on June 21, 2000. Consulate called on August 10, 2000 and they stated that they are still waiting for word from Guyana before they can issue the document. Consul called again on 12/6/00. Consul called on 1/3/01 and he suggested that the INS send a letter to the Chief Guyanese Immigration Officer in Georgetown, Guyana. Letter faxed to Georgetown on January 3, 2001 – no response.

## Legal Representative / Attorney

**G-28 Filed:**  ☐ Yes  ☒ No

**\*Legal Rep/Atty Notified of Interview:**  ☐ Yes  ☒ N/A  by:        on:

**Name of Representative / Attorney:**

**Mailing Address:**                    **Telephone Number:**

**Present during interview:**        ☐ Yes    ☐ No

## Criminal History

**Outside the United States:**  none knonwn
(specify nature of crime, whether convicted, sentence imposed, date, and country)

**In the United States:** Certified copies of convictions for the following in file:

Defendant and others conspired to utter and possess forged and counterfeit securities.

**NCIC Checks:**        ☒ Criminal History   ☐ No record Found
                        (State and Federal)
Summary of record:

FBI#: 206953DB0

| Date: | Location | Crime | Disposition |
|-------|----------|-------|-------------|
| 12/20/96 | New York | Counterfeit Securities | Convicted 8/7/98 1 year 1 day $10,000 restitution 3 years supervised release |

## Institutional / Disciplinary Record

**Did the detainee have prior Disciplinary Reports?**        ☐ Yes    ☒ No

        If Yes, List & Describe:

        Source:        SENTRY

**Disciplinary reports and Incidents while in INS Custody?**        ☒ Yes        ☒ No

        If Yes, List & Describe:
Source:

## Specifics of Interview

**Date of File Review:** 2/12/01

**Date of Detainee Interview:** 2/12/01

**Location of Interview:**     Snyder County Jail

**Interviewing Officer:#1:**    David O'Neill, Deportation Officer

      **#2:**    John Lawton, SDDO

**Interpreter Used:**  ☐ Yes      ☐ No      **Name:**
**Language/Dialect:**

---

**Does the detainee have a place to live in the United States?**   ☒ Yes ☐ No

      Address:     3126 Dwight Avenue
             Far Rockaway, NY

**Is the detainee subject to any parole or probation requirements?**   ☒ Yes ☐ No

      Describe:     3 years of supervised release with the U.S. Department of Probation

**Does the detainee have close family ties within the United States?**   ☒ Yes ☐ No

      Describe:     Subject's wife and 3 children reside at above address.

**Does the detainee have any community ties or non-governmental sponsors?**
             ☐ Yes   ☒ No
      Describe:

**Does the detainee have any employment prospects?**     ☒ Yes      ☐ No

      Describe:     Subject claims to own his own shipping company
             Gladwin, INC.
             1159 Bedford Ave
             Brooklyn, NY 11216

**What is the detainee's employment history?**

      Describe:     Subject has worked in Construction and the Shipping industry.

**What is the detainee's educational level?**

      Describe:     unknown

**Does the detainee have any vocational training?**

      Describe: no

## Medical/Psychological Concerns

**Medical/Psychological Report / Summary:** ☐ In File ☒ None ☐ Not Available

**Date and Source:**

**Other documentary evidence for consideration in this review:**

Subject has submitted several letters and certificates to be used in his review.

## Discussion at Interview

**Notes:** Subject was advised of the procedures and regulations of the review process. Subject does not retain an attorney and speaks English. Present at the interview were subject's family members, Erica OSOUNA and Merceider WILLIAMS.

**Regarding life in his home country** subject states that he was a carpenter and was in the military. He claims that he had political problems and was sponsored by his brother.

**Regarding entry information** subject states that lived in Brooklyn with his brother and worked as a carpenter.

**Regarding his family ties** subject relates that his family resides in New York.

**Regarding employment and education** subject states that he worked for in Construction and then was part owner in a construction company called BAREMA Construction Company. In 1993, he started his own company called GLADWIN, INC, an import/export company.

**Regarding his criminal history in the US,** subject states that a person gave him a fraudulent check as payment for work. He deposited that check and later – at trial – learned that the check was fraudulent. Subject states that there was only 1 check ($10,000) that was fraudulent. Subject was asked if he knew the check was fraudulent – he repeatedly denied any knowledge that the check was bad. Subject was also questioned why the pre-sentence report indicated that he deposited several checks totaling over $150,000. Subject again denied this.

**Regarding his institutional record** subject states that he has never had any infractions (verified).

**Regarding community support and sponsors** subject states that he will live with his wife and return to his business.

**Regarding him being a threat to the community or flight risk** subject states that he has never been a threat to society. He states that while on pre-trial bond he reported as required and even

surrendered as require ⬤ if his criminal sentence. Subject states ⬤ at he will report as required by INS and is wil ⬤ to pay any bond. Subject states that h ⬤ ants to be with his daughter and that if he had a good lawyer he would never had been convicted of the crime. Subject states he would appear for removal when required. Subject states that his brother called about trying to get a travel document but they will not issued it.

The INS detainee was found  ☐ **CREDIBLE**    ☒ **NOT CREDIBLE**
**Explain:**

Subject denies any criminal intent in his crime. Subject's description of the accounts of his past criminal involvement do not match with official record or reason. Subject has not accepted any responsibility for his involvement in the scheme.

### Officer Comments/Analysis & Recommendation

Although subject only has one conviction for a non-violent offense and he does not have any disciplinary problems while incarcerated he has refused to accept any participation in the fraud scheme for which he pleaded guilty. Subject has refused to accept responsibility for his past and does not appear to be credible. It is expected that Guyana will eventually issue a travel document for subject's removal and if released it is not clearly evident that he would appear as required for removal

**Recommendation:**  **Continued detention is recommended or in the alternative, release on a significant bond.**

David O'Neill, Deportation Officer                     2/14/0⬤   Detain (Release)
Interviewing Officer #1:                                        Date:

John Lawton, SDDO                                       2/15/01   Detain (Release)
Interviewing Officer #2:                                        Date:
(optional)

Reviewed by:                                            2/15/01   Concur (Do Not Concur)
                                                       Date:

# DISTRICT DIRECTOR'S CUSTODY DETERMINATION

☐    RELEASE FROM CUSTODY / ORDER OF SUPERVISION

☐    RELEASE FROM CUSTODY / ORDER OF SUPERVISION UNDER BOND

      Bond Amount: _____

☐    CONTINUE IN CUSTODY / SCHEDULE FOR REVIEW IN SIX MONTHS

Comments (attach additional sheet(s) if necessary):

INS District Office: _____

Signature of District Director: _____    Date:_____
or Designee

        _____
        (Printed Name & Title)

# HEADQUARTER'S REVIEW OF CONTINUED DETENTION

| Reviewing Officers | Concur | Reconsider | Date |
|---|---|---|---|
| _____<br>(Name, Title, Signature) | _____ | _____ | _____ |
| _____<br>(Name, Title, Signature) | _____ | _____ | _____ |
| _____<br>(Name, Title, Signature) | _____ | _____ | _____ |

For comments, please refer to the "Headquarters Post Order Custody Review" form.

(Final 10/18/99)

# EXHIBIT - 2

MAY-07-2001  12:40          INS DISTRICT COUNSEL                    215 656 7148   P.06/12

EXHIBIT B



**U.S. Department of Justice**
Immigration and Naturalization Service

A41 928 716

---

PO Box 209
White Deer, PA 17887

May 26, 2000

Mr. Brentnold Fitzpatrick Evans
Consulate General of Guyana
866 United Nations Plaza
New York, NY 10017

**RE: Gladwin WILSON**
    **A41 928 716**

Dear Mr. Evans;

Enclosed herewith is information relating to Mr. WILSON, a native and citizen of Guyana for whom a travel certificate is respectfully requested.

For your records and information, Mr. WILSON has been confined at the Federal Correctional Complex at Allenwood, PA. He had been convicted of Conspire to utter and Possess Forged and Counterfeit Securities, and is currently in Immigration and Naturalization Service Custody.

Mr. WILSON last entered the United States at New York, NY on April 18, 1988. He was afforded a hearing before an Immigration Judge in order to answer to the charges contained on the attached Notice to Appear. On October 15, 1999 he was ordered removed from the United States by an Immigration Judge. He appealed that decision to the Board of Immigration Appeals and on May 10, 2000, that appeal was dismissed.

Thank you in advance for your time and attention to this matter. Please contact David O'Neill, Deportation Officer, at (570) 547-6903 ext. 18, if you require any additional information on this or any other matter.

Sincerely.

Robert M. Culley
Institutional Hearing Program Director

Enclosures:
I-217
Photographs
Copy of Charging Document
Copy of Order
Copy of Warrant of Removal
Copy of Birth Certificate



**U.S. Department of Justice**
Immigration and Naturalization Service

A41 928 716

*PO Box 209*
*White Deer, PA 17887*

June 21, 2000

U.S. INS –HQOPS
Ellarine Alston
801 I Street, N.W.
Suite 800, 8th Floor
Washington, DC 20536

RE: Gladwin WILSON
   A41 928 716

Ms. Alston,

Please find attached a complete travel document request package for the above-mentioned subject.

Mr. WILSON is a citizen and native of Guyana. He entered the United States in April 18, 1988 at New York, N.Y. He has been convicted of Conspiracy to utter and possess forged and counterfeit securities. He was ordered deported on October 15, 1999. He appealed that decision to the Board of Immigration Appeals and on May 10, 2000, that appeal was dismissed. Mr. Wilson has been in INS custody since June 15, 1999.

A request for a travel document was sent to the Guyanan Consulate in New York, NY on May 26, 2000.

Please do not hesitate to contact this office at (570) 547-6903 Ext. 18, should you require any additional information on this matter.

Sincerely,

David O'Neill
Deportation Officer

Attachments:
I-217
4 photographs
Copy of charging document
Copy of order
Copy of Conviction records
Copy of Birth Certificate
Copy of Police Clearance from Guyana

 

**U.S. Department of Justice**
Immigration and Naturalization Service

A41 928 716

PO Box 209
White Deer, PA 17887

January 3, 2001

Deputy Chief Immigration Officer
Guyana Georgetown

**RE: Gladwin WILSON**
     **A41 928 716**

Dear Sir;

On May 26, 2000, this office made a request to the Consulate General of Guyana in New York City, N.Y. for a travel document to be issued on behalf of the above-mentioned subject, who has been ordered removed from the United States. I have spoken with Mr. Mangal at the consulate on many occasions and he has informed me that he has not yet received permission from Georgetown to the issue the document. Today, Mr. Mangal suggested that I send a follow-up request directly to ~~the~~ your office.

Since Mr. Wilson is currently in U.S. Immigration and Naturalization Service custody, any assistance you could supply in accelerating the issuance of the travel document would be greatly appreciated by Mr. Wilson and the Immigration Service.

Thank you in advance for your time and attention to this matter. Please do not hesitate to contact this office, at (570) 547-6903 ext. 18, if you require any additional information on this or any other matter.

Sincerely,

David O'Neill
Deportation Officer

Attachments:
Copy of Original Request
I-217
Copy of Birth Certificate
Copy of Police Clearance



**U.S. Department of Justice**
Immigration and Naturalization Service

A41 928 716

*PO Box 209*
*White Deer, PA 17887*

March 7, 2001

Embassy of Guyana
2490 Tracy Place
Washington, D.C. 20008

**RE: Gladwin WILSON**
   **A41 928 716**

To Whom It May Concern:

Enclosed herewith is information relating to Mr. WILSON a native and citizen of Guyana for whom a travel certificate is respectfully requested. A request was sent to the consulate in New York, NY on May 26, 2000. However, several phone calls to that office have still not produced a travel document. As Mr. WILOSN has been in INS custody pending removal for over nine months, your immediate assistance in this matter would be greatly appreciated.

For your records and information, Mr. WILSON has been confined at the Federal Correctional Complex at Allenwood, PA. He had been convicted of Conspire to utter and Possess Forged and Counterfeit Securities, and is currently in Immigration and Naturalization Service Custody.

Mr. WILSON last entered the United States at New York, NY on April 18, 1988. He was afforded a hearing before an Immigration Judge in order to answer to the charges contained on the attached Notice to Appear. On October 15, 1999 he was ordered removed from the United States by an Immigration Judge. He appealed that decision to the Board of Immigration Appeals and on May 10, 2000, that appeal was dismissed.

Thank you in advance for your time and attention to this matter. Please contact David O'Neill, Deportation Officer, at (570) 547-6903 ext. 18, if you require any additional information on this or any other matter.

Sincerely,

Robert M. Culley
Institutional Hearing Program Director

Enclosures:
I-217
Copy of Charging Document
Copy of Order
Copy of Warrant of Removal
Copy of Birth Certificate
Copy of Present letter of May 26, 2000



**U.S. Department of Justice**
Immigration and Naturalization Service

A41 928 716

PO Box 209
White Deer, PA 17887

March 7, 2001

Mr. Brentnold Fitzpatrick Evans
Consulate General of Guyana
866 United Nations Plaza
New York, NY 10017

**RE: Gladwin WILSON**
    **A41 928 716**

Dear Mr. Evans;

Please accept this letter as a follow-up to the previous request for a travel document for the above-mentioned Guyana citizen. A formal request for a travel document to be issued for the deportation of Mr. WILSON was sent to your office on May 26, 2000. Since subject is currently in INS detention, the issuance of a travel as quickly as possible would be greatly appreciated.

Thank you in advance for your time and attention to this matter. Please contact David O'Neill, Deportation Officer, at (570) 547-6903, if you require any additional information on this or any other matter.

Sincerely

David O'Neill
Deportation Officer

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

On this 17th day of May, 2001, she served a copy of the foregoing document by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania to:

> Gladwin Wilson
> Reg. No. 99-00345
> Snyder County Prison
> Unit B
> 600 Old Colony Rd
> Selinsgrove, PA  17870-8610

*Kathy Enders*
KATHY ENDERS
Legal Secretary